# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **FERGUSON, BRASWELL** | § | |
| **& FRASER, P.C.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **TRAVELERS CASUALTY INSURANCE** | § | |
| **COMPANY OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>INDEX OF STATE COURT MATERIALS</u>

| No. | Date Filed or Entered | Document |
|---|---|---|
| 1-1 | N/A | Civil Docket Sheet |
| 1-2 | 11/30/2015 | Plaintiff's Original Petition |
| 1-3 | 12/03/2015 | Citation |
| 1-4 | 12/15/2015 | Return of Service with Declaration |

# Exhibit 1-1

Skip to Main Content  Logout  My Account  Search Menu  New Civil District Search  Refine Search  Back        Location : All District Civil Courts   Images  Help

# REGISTER OF ACTIONS
## CASE NO. DC-15-14471

| | | |
|---|---|---|
| FERGUSON BRASWELL & FRASER PC vs. TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA | §<br>§<br>§<br>§<br>§ | Case Type: **INSURANCE**<br>Date Filed: **11/30/2015**<br>Location: **192nd District Court** |

---

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| **DEFENDANT** | **TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA** | |
| **PLAINTIFF** | **FERGUSON BRASWELL & FRASER PC** | **MARK DEAN JOHNSON**<br>*Retained*<br>972-383-9377(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 11/30/2015 | **NEW CASE FILED (OCA) - CIVIL** |
| 11/30/2015 | **ORIGINAL PETITION** |
| 11/30/2015 | **ISSUE CITATION** |
| 12/03/2015 | **CITATION** |

|  | | | |
|---|---|---|---|
| | TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA | Served | 12/14/2015 |
| | | Returned | 12/15/2015 |

| | |
|---|---|
| 12/03/2015 | **CITATION ISSUED** |
| 12/15/2015 | **RETURN OF SERVICE**<br>*RETURN OF SERVICE WITH DECLARATION* |

---

### FINANCIAL INFORMATION

| | |
|---|---|
| **PLAINTIFF** FERGUSON BRASWELL & FRASER PC | |
| Total Financial Assessment | 295.00 |
| Total Payments and Credits | 295.00 |
| **Balance Due as of 12/16/2015** | **0.00** |

| | | | |
|---|---|---|---|
| 12/02/2015 | Transaction Assessment | | 295.00 |
| 12/02/2015 | CREDIT CARD - TEXFILE (DC)   Receipt # 70589-2015-DCLK | Ferguson, Braswell & Fraser, P.C. | (295.00) |

# Exhibit 1-2

**1-CIT ES**

FILED
DALLAS COUNTY
11/30/2015 5:44:30 PM
FELICIA PITRE
DISTRICT CLERK

Case 3:15-cv-04019-M   Document 1-1   Filed 12/21/15   Page 6 of 41   PageID 10

CAUSE NO. DC-15-14471 _____

Tonya Pointer

| | | |
|---|---|---|
| **FERGUSON, BRASWELL & FRASER, P.C.,** | § § § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § § | |
| **Vs.** | § § | **DALLAS COUNTY, TEXAS** |
| **TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,** | § § § | |
| **Defendant.** | § | **____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff FERGUSON, BRASWELL & FRASER, P.C. (the "Firm") files this Original Petition and Initial Discovery Requests against Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA ("Travelers"), and states the following:

### I.
### DISCOVERY CONTROL PLAN

1.     The Firm intends for discovery to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

2.     The Firm seeks damages in excess of $200,000, but less than $1,000,000.

### II.
### PARTIES

3.     Ferguson, Braswell & Fraser, P.C. is a law firm licensed to practice law in the State of Texas.

4.     TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA is a foreign insurance company licensed to do business in the State of Texas, with its principal place of business in Connecticut.  Service may be had on Travelers by serving its registered agent for

service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## III.
## JURISDICTION

5.     This court has jurisdiction over the cause of action because the amount in controversy is within the jurisdictional limits of the court.

6.     The court has jurisdiction over the defendants because (a) Travelers is licensed to do insurance business in the state of Texas, (b) Travelers engages in the business of insurance in Texas, and (c) the cause of action that is the subject of this lawsuit arose out of Travelers' business activities in Texas.

## IV.
## VENUE

7.     Pursuant to Section 15.032 of the Texas Civil Practice and Remedies Code, venue is proper in Dallas County, Texas because the facts giving rise to the Firm's claim in this lawsuit occurred in whole or in part in Dallas County, Texas.

## V.
## FACTS

**A.     THE SCAM.**

8.     The Claim relates to a fraud recently committed upon the Firm.

9.     On or about February 19, 2015, John Fraser (of the Firm) was contacted by a man claiming to Bill Sherman.  Mr. Sherman claimed to be involved in oil exploration in Texas.  Mr. Sherman asked Mr. Fraser whether he or one of his partners could assist with the documentation of a purchase and sale transaction in Texas.  Mr. Fraser informed Mr. Sherman that although he

did not perform this type of legal work, he would see if another member of the Firm could assist him.

10.     Mr. Fraser put Mr. Sherman in contact with Dustin Sparks, a transactional attorney with the Firm.  During this conversation, Mr. Sherman stated he was interested in selling a drilling rig (the "Transaction") for approximately $11,000,000 to a company called ING Oil Inc. ("ING"), which allegedly was represented by TNTH Global Investment ("TNTH").  In order to preserve its rights during a pre-contract inspection (which was to be arranged by Mr. Sherman), ING agreed to pay $450,000 into escrow, $250,000 which would be held in escrow until purchase of the drilling rig and $200,000 of which would be released to a third party inspection company to cover inspection costs for the inspection of the drilling rig.  Based on Mr. Sherman's description of the transaction and his agreement to pay the Firm's fees and retainer, Mr. Sparks agreed to represent him.

11.     When Mr. Sherman first spoke with Mr. Sparks, the terms of the Transaction had not been finalized.  Mr. Sherman stated that once he completed negotiations, he would have TNTH prepare a Letter of Intent (the "LOI") outlining the business term of the transactions based on the foregoing.  At that time, Mr. Sherman would require TNTH to deliver the $450,000 earnest money payment.

12.     On March 9, 2015, Mr. Sherman sent an e-mail (from billsherman@edfenergydrilling.com) to Mr. Sparks regarding the Transaction.  Mr. Sherman stated TNTH had signed the LOI, and would deliver the earnest money to Mr. Sparks that day.  The LOI states the following regarding the earnest money and inspection costs:

> EARNEST MONEY:  Deposit in the amount of 450,000.00 has been attached to our LOI which covers the cost of inspection; all earnest money shall be applied to the Purchase Price at closing.

> EXPENDITURE: Attorney has been AUTHORIZED to release 200,000 to seller for inspection cost and insurance coverage to commence Inspection which we have both agreed is non-refundable. Balance funds should be held in trust until final closing.
>
> PAYMENT: $450,000 has been issued by Cashier's check from the buyer which is guaranteed funds, balance $10,550,000 will be issued by wire transfer to seller upon completion of Inspection and signing of Purchase contract.

13.     In conjunction with the signed LOI, TNTH delivered a cashier's check (the "Cashier's Check") to the Firm in the amount of $450,000. The Cashier's Check was made payable to the Firm and from Citibank, N.A.

14.     On March 10, 2015, Mr. Sparks once again spoke with Mr. Sherman. Mr. Sparks notified Mr. Sherman that he had received the LOI (signed by ING) and the Cashier's Check. Mr. Sparks requested a copy of the LOI signed by Mr. Sherman before he proceeded to deposit the Cashier's Check and move forward with the Transaction. Mr. Sparks stated that when and if the Cashier's Check cleared, he would release the $200,000 (the inspection/insurance costs) to the account designated in the LOI for inspection of the drilling rig as required in the LOI.

15.     On March 12, 2015, Mr. Sherman sent an e-mail to Mr. Sparks, attaching a copy of the fully-signed LOI and wiring the instructions for the drilling rig inspection company. At that time, Mr. Sparks instructed Ashlee Rouse, the Firm's CFO, to contact Iberia Bank (the Firm's bank) to inquire whether the Cashier's Check had cleared and the funds were available for delivery to the inspection company. Iberia Bank's online records indicated that the funds represented by the Cashier's Check in fact were in the Firm's trust account and available. Therefore, after confirmation from the Firm's bank that the Cashier's Check had cleared and funds were available, Mrs. Rouse authorized Iberia Bank to wire transfer $200,000 to the inspection company for the

inspection of the drilling rig.  Mr. Sherman contacted Mr. Sparks on March 12, 2015 to insure the funds had been wired to the inspection company, which was confirmed by Mrs. Rouse.

16.    During the week of March 16, 2015, a representative of Iberia Bank contacted Mrs. Rouse and notified her that the Cashier's Check had been rejected by Citibank, the bank that purportedly issued the Cashier's Check, and Mrs. Rouse contacted Mr. Sparks to notify him of the fraud.  Without notice to the Firm and against the Firm's knowledge, according to Citibank, the Cashier's Check was a counterfeit.  Rather than call Citibank to confirm the Cashier's Check's authenticity, Iberia Bank simply credited the Firm's trust account as a "courtesy".  Iberia Bank did not notify Mrs. Rouse of this "courtesy" when she inquired about the funds, but instead stated that the funds were in the Firm's trust account – indicating that the Cashier's Check had cleared and the funds were available.

17.    Upon learning that the Cashier's Check was likely a counterfeit, Mr. Sparks contacted Mr. Sherman to notify him the cashier's check received by the Firm was potentially a counterfeit and to arrange for payment by Mr. Sherman.  Mr. Sherman seemed very surprised and agitated by the failure to deliver good funds, assured Mr. Sparks he would call the broker immediately, and assured Mr. Sparks that he would contact his bank and have the $200,000 wired to the Firm's account immediately (and requested the Firm's wiring instructions) and would handle this purchaser immediately.  In fact, according to the U.S. Secret Service, the FBI, and the Plano, Texas Police Department (all of which have spoken with Mr. Sparks and other employees of the Firm), Mr. Sherman name actually is Muhammad Naji.  Mr. Naji has performed similar scams on other law firms, in which he and his partners in crime pretends to be both the buyer and seller of real property.  Mr. Naji was convicted by the United States Middle District of Florida for fraud and money laundering.

**B.**     **THE POLICY.**

18.     Prior to the Transaction, the Firm obtained Office Pac insurance policy number 680-7E593217-14-42 (the "Policy") from Travelers for the period from June 1, 2014 to June 1, 2015. The Policy was in full force and effect at the time of the Transaction.

19.     The Policy contains a standard "Business Property Coverage" form. This form generally affords coverage for "directly physical loss of or damage to Covered Property," which is defined to include "money" and "securities." These coverages are subject to a series of exclusions, including the following:

> Voluntary parting with any property by [the Firm] or anyone else to whom [the Firm has] entrusted the property.

This exclusion is referred to herein as the "Voluntary Parting Exclusion."

20.     The Policy, however, is not limited to the basic coverage in the Business Property Coverage form. The Policy indicates it is a "Custom Insurance Policy Prepared for [the Firm]." One of the custom coverages afforded by the Policy – *for which the Firm paid an additional premium* – relates specifically to scams such as the Transaction:

**k.**     **Money Orders and Counterfeit Paper Currency**

> When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to loss due to the food faith acceptance of:
>
> 1.  Any U.S. or Canadian post office or express money order, issued or purporting to have been issued by any post office or express company, if the money order is not paid upon presentation; or
>
> 2.  Counterfeit United States or Canadian paper currency;
>
> in exchange for merchandise, "money" or services or as part of a normal business transaction.

This provision is referred to herein as the "Money Order Provision." The Policy does not define the terms "express money order" or "express company."

## C.   THE CLAIM.

21.     On July 10, 2015 (within the period required by the Policy for written notice), the Firm wrote to Travelers regarding the Transaction, requesting Travelers to compensate the Firm for its loss. This claim was assigned Claim No. E1S4054 (the "Claim"). The Firm's letter (the "Demand Letter") is attached as Exhibit A.

22.     On or about July 29, 2015, Travelers sent a letter (the "Denial Letter") to the Firm, denying the Claim. Travelers contends when the Firm wired funds from its escrow account – as it was fraudulently instructed to do by its "client" – the Firm "voluntarily parted" with the funds ($200,000) that are the subject of the Claim. Travelers contends this "voluntary parting" triggered the Voluntary Parting Exclusion.

23.     In a subsequent telephone conversation with the Firm's coverage attorney, Travelers' adjuster directed him to several decisions that Travelers relied upon in "support" of its position. These decisions are not on point. For example, in *Schweet Linde & Coulson, P.L.L.C. v. Travelers Casualty Insurance Company of America*, 2015 WL 3447242 (W.D. Wash., 2015), the insured distributed trust funds based on its receipt of a bogus cashier's check, and a fraudulent instruction from the insured's "client." The court found the policy's coverage for "theft" was not inconsistent with the "voluntary parting" exclusion. "While [the insured] may have been unaware of the donut hole in its coverage, it has not identified an ambiguity or offered a reasonable interpretation of the policy that could justify a finding of coverage. Thus, a loss by theft is not covered if [the insured] voluntarily parted with the property." *Id.* at *3.

24.     As the Firm's coverage attorney explained, the Claim is not based on the Policy's theft coverage.  The Policy contains a coverage *extension* that is not discussed in the *Schweet* decision.  In the Denial Letter, Travelers does not dispute that a cashier's check is the equivalent of an "express money order," or that the Firm received the cashier's check (the subject of the Claim) as part of a normal business transaction.  As such, the *Schweet* decision is inapplicable.

25.     The Firm's coverage attorney further explained that, unlike the theft claim in *Schweet,* the Money Order Provision is inherently inconsistent with the Voluntary Parting Exclusion (if interpreted to include payments induced by fraud).  The *Schweet* court noted that a theft claim could exist where an insured is not defrauded; *i.e.* the theft coverage was *broader* than the exclusion.  However, a claim under the Money Order Provision is specifically limited to situations where the insured is defrauded ("loss due to the *good faith acceptance* of . . . an express money order").  If the Voluntary Parting Exclusion were interpreted to apply to situations where the insured is defrauded, there *never* would be coverage under the Money Order Provision.

26.     Finally, the Firm's coverage attorney explained the Money Order Provision's coverage is distinguishable from theft coverage based on nature of the loss, and when it occurs.  Theft, by its nature, occurs when property leaves a person's possession.  The Money Order Provision claim, on the other hand, is ripe when "the money order is not paid upon presentation."  An insured is not required to "part" with anything in order to trigger coverage under the Money Order Provision.  Under our facts, the Firm did not "part" with the bogus cashier's check, but instead simply paid money based on its good faith reliance on the cashier's check validity.  As such, the Voluntary Parting Exclusion is not applicable.

27.     As explained above, the Firm went to great lengths to provide the facts of the Claim, and to explain why the Claim was covered.  The Firm even explained to Travelers' adjuster why

the decision upon which Travelers relied in the Denial Letter was not applicable to the Claim.  The Firm's efforts were in vain.  Although Travelers' adjuster could not offer a single example of when a law firm *ever* would have a covered claim under the Money Order Provision, he refused to reconsider Travelers' denial.  Instead, he advised the Firm's coverage attorney he would have to file suit.

## VI.
## CAUSES OF ACTION

**A.**    **BREACH OF CONTRACT.**

28.    Paragraphs 8 through 27 are incorporated by reference.

29.    The conduct of Travelers, as described above, constitutes a breach of the insurance contract made between Travelers and the Firm.

30.    Travelers' failure and refusal, as described above, to pay the Claim as it is obligated to do under the terms of the Policy and under the laws of the State of Texas, constitutes a material breach of the insurance contract with the Firm.  Travelers' breach of the contract proximately caused the Firm to suffer damages in the form of actual damages and consequential damages, along with reasonable and necessary attorney's fees.  The Firm has complied with all obligations and conditions required of it under the Policy.

**B.**    **VIOLATIONS OF THE TEXAS INSURANCE CODE BY TRAVELERS.**

31.    Paragraphs 8 through 27 are incorporated by reference.

32.    The conduct of Travelers, as described herein, constitutes multiple violations of the Texas Unfair Compensation and Unfair Practices Act., TEX. INS. CODE Chapter 541. All violations under this article are made actionable by TEX. INS. CODE Section 541.151.

33.     Travelers' unfair practice, described above, of misrepresenting to the Firm material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE Sections 541.051, 541.060 and 541.061.

34.     Travelers' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claims even though its liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE Sections 541.051, 541.060 and 541.061.

35.     Travelers' unfair settlement practice, as described above, of failing to promptly provide the Firm with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE Sections 541.051, 541.060 and 541.061.

36.     Finally, Travelers' unfair settlement practice, described above, of refusing to pay the Firm's Claim while failing to conduct a reasonable investigation, constitutes an unfair method of competition, and unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE Sections 541.001, et seq., including, without limitation, 541.051, 541.060 and 541.061.

C.      **BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING BY TRAVELERS.**

37.     Paragraphs 8 through 27 are incorporated by reference.

38.     Travelers, as an insurer, is subject to the laws of the State of Texas and owed the Firm the duty to deal with it fairly and in good faith.

39.     Travelers refused to pay the Firm's Claim despite the fact that its liability was clear. No reasonable insurer would have failed to pay this claim with the information available to

Travelers at the time that it decided not to pay the full value of the Claim.  The conduct of Travelers constitutes a breach of the common law duty of good faith and fair dealing owed to insureds under insurance contracts.  Likewise, Travelers' failure to adequately and reasonably investigate and evaluate the Claim, while Travelers knew or should have known by the exercise of reasonable diligence that its liability is reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

40.     The refusal to fully adjust and pay the Claim in violation of the duties of good faith and fair dealing, proximately caused the Firm to suffer independent damages including economic damage caused by the denial.  Travelers is liable to the Firm for extra contractual damages for its separate injury and independent damages in a sum in excess of the minimum jurisdictional limits of the court.

**D.     VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT BY TRAVELERS.**

41.     Paragraphs 8 through 27 are incorporated by reference.

42.     The Firm purchased the Policy and is a consumer as that term is defined under the Texas Deceptive Trade Practices Act.  The Firm has been damaged by Travelers', described above, which constitutes a deceptive or unfair insurance practice as that term is defined under the Texas Insurance Code.

43.     Each of the acts described above, together and singularly, constitute a violation of the Texas Deceptive Trade Practices Act pursuant to its tie-in provision for Insurance Code Violations.     Accordingly, Travelers also brings each and every cause of action alleged above under the Texas Deceptive Trade Practices Act pursuant to its tie-in provision.

44.     Travelers has violated the Texas Deceptive Trade Practices Act in the following non-exclusive manners:

a.      representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

b.      representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

c.      failing to disclose information concerning good or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the customer into a transaction into which the customer would not have entered had the information been disclosed;

d.      knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue; and

e.      not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear.

45.     The conduct of Travelers, as described herein, was a producing cause of the Firm's economic damages. As a result, the Firm suffered economic damage and expenses for which Travelers is liable.

46.     As a direct result of Travelers' knowing misconduct, the Firm suffered additional damages. Accordingly, Travelers is liable to the Firm for economic damages and additional damages of up to three times economic as permitted by the Texas Deceptive Trade Practices Consumer Protection Act.

**VII.**
**CONDITIONS PRECEDENT**

47.     All conditions precedent to this lawsuit have occurred or have been waived.

**VII.**
**INITIAL DISCOVERY REQUESTS**

48.     Attached as Exhibits B and C are the Firm's Request for Disclosure and First Request for Production to Travelers. Pursuant to the Texas Rules of Civil Procedure, the Firm requests Travelers to respond to these requests within fifty (50) days of the date of service.

WHEREFORE, PREMISES CONSIDERED, the Firm prays that defendant, Travelers be cited to appear and answer, and that on a final trial on the merits, the Firm recover from Travelers economic damages, consequential damages, statutory damages under the DTPA and the Texas Insurance Code, interest as provided by law, attorney's fees, and court costs.

Respectfully submitted,

MARK D. JOHNSON
State Bar No. 10770175

FLANNIGAN LAW FIRM, P.C.
14241 Dallas Parkway, Suite 650
Dallas, Texas 75254
972-383-9377 (tel)
214-593-1441 (fax)
Mark@Flanniganlawfirm.com

And

Alexander N. Beard
State Bar No. 01970000

Saunders, Walsh & Beard
Craig Ranch Professional Plaza
6850 TPC Drive, Suite 210
McKinney, Texas 75070
(214) 919-3555 Telephone
(214) 644-2050 Telecopier
Alex@SaundersWalsh.com

**ATTORNEY FOR PLAINTIFF**
**FERGUSON, BRASWELL & FRASER, P.C.**

# EXHIBIT A



# FERGUSON, BRASWELL & FRASER, PC
*Attorneys & Counselors*

July 10, 2015

VIA E-MAIL IFARINAS@TRAVELERS.COM
VIA CERTIFIED MAIL 7014 2870 0000 2401 0426
Iran Farinas
Travelers Insurance
Third Floor
4650 Westway Park Blvd.
Houston, Texas 77041

   Re: Travelers Property Claim #E1S4054

Dear Mr. Farinas,

  I represent Ferguson, Braswell, & Fraser, P.C. (the "Firm"). Earlier this week, you and I discussed the above-referenced claim (the "Claim") the Firm is asserting upon Travelers Casualty Insurance Company of America ("Travelers") with respect to Policy No. 680-78593217-14-42 (the "Policy"). I am providing this letter and the attachments to assist you to evaluate the Claim.

## FACTS

  The Claim relates to a fraud recently committed upon the Firm.

  On or about February 19, 2015, John Fraser (of the Firm) was contacted by a man claiming to Bill Sherman. Mr. Sherman claimed to be involved in oil exploration in Texas. Mr. Sherman asked Mr. Fraser whether he or one of his partners could assist with the documentation of a purchase and sale transaction in Texas. Mr. Fraser informed Mr. Sherman that although he did not perform this type of legal work, he would see if another member of the Firm could assist him.

  Mr. Fraser put Mr. Sherman in contact with Dustin Sparks, a transactional attorney with the Firm. During this conversation, Mr. Sherman stated he was interested in selling a drilling rig (the "Transaction") for approximately $11,000,000 to a company called ING Oil Inc. ("ING"), which allegedly was represented by TNTH Global Investment ("TNTH"). In order to preserve its rights during a pre-contract inspection (which was to be arranged by Mr. Sherman), ING agreed to pay $450,000 into escrow, $250,000 which would be held in escrow until purchase of

the drilling rig and $200,000 of which would be released to a third party inspection company to cover inspection costs for the inspection of the drilling rig. Based on Mr. Sherman's description of the transaction and his agreement to pay the Firm's fees and retainer, Mr. Sparks agreed to represent him.

When Mr. Sherman first spoke with Mr. Sparks, the terms of the Transaction had not been finalized. Mr. Sherman stated that once he completed negotiations, he would have TNTH prepare a Letter of Intent (the "LOI") outlining the business term of the transactions based on the foregoing. At that time, Mr. Sherman would require TNTH to deliver the $450,000 earnest money payment.

On March 9, 2015, Mr. Sherman sent an e-mail (from billsherman@edfenergydrilling.com) to Mr. Sparks regarding the Transaction. Mr. Sherman stated TNTH had signed the LOI, and would deliver the earnest money to Mr. Sparks that day. A copy of the LOI is attached to the e-mail string that is attached as Exhibit C. The LOI states the following regarding the earnest money and inspection costs:

> EARNEST MONEY: Deposit in the amount of 450,000.00 has been attached to our LOI which covers the cost of inspection; all earnest money shall be applied to the Purchase Price at closing.

> EXPENDITURE: Attorney has been AUTHORIZED to release 200,000 to seller for inspection cost and insurance coverage to commence Inspection which we have both agreed is non-refundable. Balance funds should be held in trust until final closing.

> PAYMENT: $450,000 has been issued by Cashier's check from the buyer which is guaranteed funds, balance $10,550,000 will be issued by wire transfer to seller upon completion of Inspection and signing of Purchase contract.

In conjunction with the signed LOI, TNTH delivered a cashier's check (the "Cashier's Check") to the Firm in the amount of $450,000. A copy of the Cashier's Check is attached. The Cashier's Check was made payable to the Firm and from Citibank, N.A.

On March 10, 2015, Mr. Sparks once again spoke with Mr. Sherman. Mr. Sparks notified Mr. Sherman that he had received the LOI (signed by ING) and the Cashier's Check. Mr. Sparks requested a copy of the LOI signed by Mr. Sherman before he proceeded to deposit the Cashier's Check and move forward with the Transaction. Mr. Sparks stated that when and if the Cashier's Check cleared, he would release the $200,000 (the inspection/insurance costs) to the account designated in the LOI for inspection of the drilling rig as required in the LOI.

On March 12, 2015, Mr. Sherman sent an e-mail to Mr. Sparks, attaching a copy of the fully-signed LOI and wiring the instructions for the drilling rig inspection company. At that time, Mr. Sparks instructed Ashlee Rouse, the Firm's CFO, to contact Iberia Bank (the Firm's bank) to inquire whether the Cashier's Check had cleared and the funds were available for delivery to the inspection company. Iberia Bank's online records indicated that the funds represented by the Cashier's Check in fact were in the Firm's trust account and available. Therefore, after confirmation from the Firm's bank that the Cashier's Check had cleared and funds were available, Mrs. Rouse authorized Iberia Bank to wire transfer $200,000 to the inspection company for the inspection of the drilling rig. Mr. Sherman contacted Mr. Sparks on March 12, 2015 to insure the funds had been wired to the inspection company, which was confirmed by Mrs. Rouse.

During the week of March 16, 2015, a representative of Iberia Bank contacted Mrs. Rouse and notified her that the Cashier's Check had been rejected by Citibank, the bank that purportedly issued the Cashier's Check, and Mrs. Rouse contacted Mr. Sparks to notify him of the fraud. Without notice to the Firm and against the Firm's knowledge, according to Citibank, the Cashier's Check was a counterfeit. Rather than call Citibank to confirm the Cashier's Check's authenticity, Iberia Bank simply credited the Firm's trust account as a "courtesy". Iberia Bank did not notify Mrs. Rouse of this "courtesy" when she inquired about the funds, but instead stated that the funds were in the Firm's trust account – indicating that the Cashier's Check had cleared and the funds were available.

Upon learning that the Cashier's Check was likely a counterfeit, Mr. Sparks contacted Mr. Sherman to notify him the cashier's check received by the Firm was potentially a counterfeit and to arrange for payment by Mr. Sherman. Mr. Sherman seemed very surprised and agitated by the failure to deliver good funds, assured Mr. Sparks he would call the broker immediately, and assured Mr. Sparks that he would contact his bank and have the $200,000 wired to the Firm's account immediately (and requested the Firm's wiring instructions) and would handle this purchaser immediately. In fact, according to the U.S. Secret Service, the FBI, and the Plano, Texas Police Department (all of which have spoken with Mr. Sparks and other employees of the Firm), Mr. Sherman name actually is Muhammad Naji. Mr. Naji has performed similar scams on other law firms, in which he and his partners in crime pretends to be both the buyer and seller of real property. Attached is an article about Mr. Naji's criminal enterprise Also attached is a letter from United States District Court for the Middle District of Florida relating to Mr. Naji's conviction

## CLAIM

The Firm seeks coverage under the Policy for the $200,000 it paid as a result of the fraud committed upon it by Mr. Naji. Although the Firm seeks payment of this amount under any applicable provisions in the Policy, it believes the provisions discussed below are particularly applicable to the Firm's claim.

The Policy affords coverage for "Money Orders and Counterfeit Paper Currency." Under this provision (the "Money Order Provision"):

> When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to loss due to the good faith acceptance of:
>
> Any U.S. or Canadian post office or express money order, issued or purporting to have been issued by any post office or express company, if the money order is not paid upon presentation . . . .
>
> in exchange for merchandise, "money" or services or as part of a normal business transaction.

The Policy does not define the terms "express money order" or "express company."

We believe a cashier's check is the same as, or analogous to, an "express money order." The purpose of a cashier's check is to expedite the transfer of funds from one person to another. The purpose of a cashier's check also is to guarantee the existence of funds in the face amount of the check. In these regards, there is no difference between a cashier's check and a "express money order" (whatever that term may mean), and no difference between an issuing bank and an "express company." Having failed to define these terms, Travelers cannot reasonably argue that the Cashier's Check is not an "express money order" under the Policy's Money Order Provision.

The Cashier's Check likewise was received by the Firm in a manner anticipated by the Policy's Money Order Provision. The Money Order Provision is not limited to counterfeit or forged "express money orders" received in payment of the Firm's bills. Instead, the Money Order Provision simply requires that an "express money order" be received "as part of a normal business transaction." As a law firm specializing in business transactions, the Firm regularly accepts cashier's checks and holds the related funds in trust. That is precisely what happened in the Transaction.

Finally, the Policy's exclusions are not applicable to this claim. The Policy contains an exclusion (the "Voluntary Parting Exclusion") that states:

> [Travelers] will not pay for loss or damage caused directly or indirectly by . . . (i) Voluntary parting with any property by you or anyone else to whom you have entrusted the property.

We do not believe the Voluntary Parting Exclusion ever could apply where an insured "parts" with trust funds at the instruction of the funds' purported owner (as is the case in the Transaction). However, even if such an interpretation were possible, the Voluntary Parting Exclusion clearly would not apply where an "express money order" is received "in exchange for

Iran Farinas
July 10, 2015
Page 5

merchandise, money or services, or as part of a normal business operation." In the Transaction, the Firm "parted" with the Cashier's Check funds simply as part of its agreed business operations, for which it charged a fee. In that there was a *quid pro quo* in connection with the Firm's trust services, Travelers cannot argue in good faith that the Firm acted "voluntarily" by releasing the trust funds.

In support of this claim, I have attached (a) Affidavit from Mr. Sparks, (b) a copy of the Cashier's Check, (c) an e-mail string beginning with Mr. Naji's first contact with Mr.Fraser and ending with the wire transfer, (d) an article relating to Mr. Naji's conviction, and (e) a letter from the United States District Court for the Middle District of Florida relating to Mr. Naji's conviction. If you require any additional documentation, or have any questions, please call me.

Sincerely,

Mark D. Johnson

Attachments

# EXHIBIT B

CAUSE NO. _____

| | | |
|---|---|---|
| **FERGUSON, BRASWELL** | § | **IN THE DISTRICT COURT** |
| **& FRASER, P.C.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **Vs.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **TRAVELERS CASUALTY INSURANCE** | § | |
| **COMPANY OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | **____ JUDICIAL DISTRICT** |

### PLAINTIFF'S REQUEST FOR DISCLOSURE TO DEFENDANT

TO: Defendant Travelers Casualty Insurance Company of America, by and through its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are requested to disclose, within fifty (50) days following service of this request, the information or material described in Rule 194.2, as follows:

### REQUESTS

**REQUEST FOR DISCLOSURE NO. 1:** The correct names of the parties to the lawsuit (Rule 194.2(a)).

**RESPONSE:**

**REQUEST FOR DISCLOSURE NO. 2:** The names, addresses, and telephone numbers of any potential parties (Rule 194.2(b)).

**RESPONSE:**

**REQUEST FOR DISCLOSURE NO. 3:** The legal theories and, in general, the factual bases of the responding party's claims or defenses (Rule 194.2(c)).

**RESPONSE:**

**REQUEST FOR DISCLOSURE NO. 4:**  The amount and any method of calculating economic damages (Rule 194.2(d)).

**RESPONSE:**

**REQUEST FOR DISCLOSURE NO. 5:**  The names, addresses, and telephone numbers of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case (Rule 194.2(e)).

**RESPONSE:**

**REQUEST FOR DISCLOSURE NO. 6:**  For any testifying expert(Rule 194.2(f)):

      a.      The expert's name, address, and telephone number;

      b.      The subject matter on which the expert will testify;

      c.      The general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information; and

      d.      If the expert is retained by, employed by, or otherwise subject to the control of the responding party:

            (i)      All documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

            (ii)      The expert's current resume and bibliography.

**RESPONSE:**

**REQUEST FOR DISCLOSURE NO. 7:**  Any discoverable indemnity and insuring agreements (Rule 194.2(g)).

**RESPONSE:**

**REQUEST FOR DISCLOSURE NO. 8:**  Any discoverable settlement agreements (Rule 194.2(h)).

**RESPONSE:**

**REQUEST FOR DISCLOSURE NO. 9:**  Any discoverable witness statements (Rule 194.2(i)).

**RESPONSE:**

**REQUEST FOR DISCLOSURE NO. 10:**  The name, address, and telephone number of any person who may be designated as a responsible third party (Rule 194.2(l)).

**RESPONSE:**

Respectfully submitted,

FLANNIGAN LAW FIRM, P.C.

/s/  Mark D. Johnson
MARK D. JOHNSON
State Bar No. 10770175
14241 Dallas Parkway, Suite 650
Dallas, Texas 75254
972-383-9377 (tel)
214-593-1441 (fax)
Mark@Flanniganlawfirm.com

ATTORNEY FOR PLAINTIFF
FERGUSON, BRASWELL & FRASER, P.C.

# EXHIBIT C

**CAUSE NO. _____**

| | | |
|---|---|---|
| **FERGUSON, BRASWELL** | § | **IN THE DISTRICT COURT** |
| **& FRASER, P.C.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **Vs.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **TRAVELERS CASUALTY INSURANCE** | § | |
| **COMPANY OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | **____ JUDICIAL DISTRICT** |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT

TO:   Defendant Travelers Casualty Insurance Company of America, by and through its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

Pursuant to Rules 192, 193, and 196 of the Texas Rules of Civil Procedure, Plaintiff Ferguson, Braswell & Fraser, P.C. serve this First Request for Production to Defendant Travelers Casualty Insurance Company of America in the above-styled and numbered cause.  The documents and things are to be produced at the offices of Flannigan Law Firm, P.L.L.C., 14241 Dallas Parkway, Suite 650, Dallas, Texas 75254, fifty (50) days following service of these requests.  You are to produce the originals and all non-identical copies of each document and thing identified, and to clearly identify the particular request to which each document or thing produced is responsive.  These requests shall be deemed continuing until and during trial of this cause.

Pursuant to Rule 193.5 of the Texas Rules of Civil Procedure, you are under a duty to supplement or amend your responses.

Respectfully submitted,

FLANNIGAN LAW FIRM, P.C.

/s/  Mark D. Johnson
MARK D. JOHNSON
State Bar No. 10770175
14241 Dallas Parkway, Suite 650
Dallas, Texas 75254
972-383-9377 (tel)
214-593-1441 (fax)
Mark@Flanniganlawfirm.com

ATTORNEY FOR PLAINTIFF
FERGUSON, BRASWELL & FRASER, P.C.

## DEFINITIONS

1.  "FIRM," as used in these Requests, means the law firm of Ferguson, Braswell & Fraser, P.C., and includes its officers, directors, agents, members, employees, attorneys, successors, and assigns.

2.  "TRAVELERS" and "YOU," as used in these Requests, mean Travelers Casualty Insurance Company of America, and includes its officers, directors, agents, members, employees, attorneys, successors, and assigns.   Without limitation, these terms include Travelers' parent, subsidiary, and sister companies, including without limitation The Travelers Indemnity Company of Connecticut, Travelers Indemnity Company of America,

3.  "Policy," as used in these Requests, means Your insurance policy number 680-7E593217, issued by You to the Firm.

4.  "Claim," as used in these Requests, means the claim asserted by the Firm against You regarding the Loss, to which You have assigned Claim Number E1S4054.

5.  "Loss," as used in these Requests, means the payment by the Firm of approximately $200,000 which is the subject of this lawsuit, as which is more particularly described in the Firm's Original Petition (as the same may be amended from time to time), July 10, 2015 letter, and November 13, 2015 letters.

6.  "Denied Claims," as used in these Requests, means all claims initiated in the past ten (10) years at any location in the United States, in which the insured sought reimbursement for amounts paid as a result of third-party fraud (*i.e.* not committed by an employee), for which You denied coverage based on the Voluntary Parting Exclusion.

7.  "Similar Claims," as used in these Requests, means all claims initiated in the past ten (10) years at any location in the United States, in which the insured sought reimbursement for amounts pursuant to the Money Order Provision.

8.  "Money Order Provision," as used in these Requests, means the Policy's Money Order and Counterfeit Paper Currency provision, which states:

> When a Limit of Insurance is shown in the Declarations for Business Personal Property at the described premises, you may extend that insurance to apply to loss due to the good faith acceptance of:  Any U.S. or Canadian post office or express money order, issued or purporting to have been issued by any post office or express company, if the money order is not paid upon presentation . . . in exchange for merchandise, "money" or services or as part of a normal business transaction.

9.   "Voluntary Parting Exclusion," as used in these Requests, means Exclusion B(2) from the

Policy's Businessowners Property Coverage Special Form, which states:

    B.    We will not pay for loss or damage caused by or resulting from any of the following:

        i.    Voluntary parting with any property by you or anyone else to whom you have entrusted the property.

10.    "Relevant Time Period," as used in these Requests, means the period beginning ten (10) years prior to the filing of this lawsuit, and continuing until the time of trial in this lawsuit.

11.    "Relevant Geographical Area," as used in these Requests, means any location in the United States of America.

## <u>REQUESTS</u>

Please produce the following documents.  Unless otherwise stated, these Requests are intended to apply to the Relevant Time Period and Relevant Geographical Area.

REQUEST FOR PROCUTION NO. 1:   All correspondence between You and the Firm relating to the issuance of the Policy.

RESPONSE:

REQUEST FOR PROCUTION NO. 2:   All documents (including applications) relating to the issuance of the Policy.

RESPONSE:

REQUEST FOR PROCUTION NO. 3:   Your entire underwriting file relating to the Policy.

RESPONSE:

REQUEST FOR PROCUTION NO. 4:   All correspondence between You and the Firm relating to the Claim.

RESPONSE:

REQUEST FOR PROCUTION NO. 5:   All documents relating to the Claim.

RESPONSE:

REQUEST FOR PROCUTION NO. 6:   All documents relied upon by You in denying the Claim.

RESPONSE:

REQUEST FOR PROCUTION NO. 7:  Your   entire   claim   file   (including   all   internal communications and memoranda) relating to the Claim.

RESPONSE:

REQUEST FOR PROCUTION NO. 8:  Your   entire   claim   file   (including   all   internal communications and memoranda) relating to Denied Claims.

RESPONSE:

REQUEST FOR PROCUTION NO. 9:  Your   entire   claim   file   (including   all   internal communications and memoranda) relating to Similar Claims.

RESPONSE:

REQUEST FOR PROCUTION NO. 10:  All pleadings, discovery, orders, judgments, and other documents relating to any lawsuit relating to Denied Claims.

RESPONSE:

REQUEST FOR PROCUTION NO. 11:  All pleadings, discovery, orders, judgments, and other documents relating to any lawsuit relating to Similar Claims.

RESPONSE:

REQUEST FOR PROCUTION NO. 12: All pleadings, discovery, orders, judgments, and other documents relating to the Money Order Provision.

    RESPONSE:

REQUEST FOR PROCUTION NO. 13: All pleadings, discovery, orders, judgments, and other documents relating to *Schweet Linde & Coulson, P.L.L.C. v. Travelers Casualty Insurance Company of America.*

    RESPONSE:

REQUEST FOR PROCUTION NO. 14: All pleadings, discovery, orders, judgment, and other documents relating to *Martin, Shudt, Wallas, DiLorenzo & Johnson v. Travelers Indemnity Company of Connecticut*.

    RESPONSE:

REQUEST FOR PROCUTION NO. 15: All pleadings, discovery, orders, judgment, and other documents relating to *Schmidt v. Travelers Indemnity Company of America.*

    RESPONSE:

REQUEST FOR PROCUTION NO. 16: All documents (including all internal communications and memoranda) in which You have interpreted or applied the Voluntary Parting Exclusion.

    RESPONSE:

REQUEST FOR PROCUTION NO. 17: All documents (including all internal communications and memoranda) in which You have interpreted or applied the Money Order Provision.

    RESPONSE:

# Exhibit 1-3

**FORM NO. 353-3 - CITATION**

# THE STATE OF TEXAS

**To:** **TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA**
**BY SERVING REGISTERED AGENT CORPORATION SERVICE COMPANY**
**211 EAST 7TH STREET SUITE 620**
**AUSTIN TX 78701-2318**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **192nd District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **FERGUSON BRASWELL & FRASER PC**

Filed in said Court **30th day of November, 2015** against

**TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA**

For Suit, said suit being numbered **DC-15-14471**, the nature of which demand is as follows:
Suit on **INSURANCE** etc. as shown on said petition **REQUEST FOR DISCLOSURE AND REQUEST FOR PROCUTION**, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 3rd day of December, 2015.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By  /s/ Gay Lane                    , Deputy

GAY LANE



---

# CITATION

## DC-15-14471

**FERGUSON BRASWELL & FRASER PC**

**vs.**

**TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA**

ISSUED THIS
**3rd day of December, 2015**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: GAY LANE, Deputy

**Attorney for Plaintiff**
MARK DEAN JOHNSON
14241 DALLAS PARKWAY
SUITE 650
DALLAS TX 75254
972-383-9377

---

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

# OFFICER'S RETURN

Case No. : DC-15-14471

Court No.192nd District Court

Style: FERGUSON BRASWELL & FRASER PC

vs.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

Came to hand on the _____ day of _____, 20 ____, at _____ o'clock _____.M. Executed at _____,

within the County of _____ at _____ o'clock _____.M. on the _____ day of _____,

20 ____, by delivering to the within named

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by

me in serving such process was _____ miles and my fees are as follows:  To certify which witness my hand.

For serving Citation        $ _____                    _____

For mileage                 $ _____          of _____ County, _____

For Notary                  $ _____                    By _____ Deputy

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20 ____,

to certify which witness my hand and seal of office.

_____

Notary Public _____ County

# Exhibit 1-4

FILED
DALLAS COUNTY
12/15/2015 10:45:12 AM
FELICIA PITRE
DISTRICT CLERK

Case 3:15-cv-04019-M   Document 1-1   Filed 12/21/15   Page 41 of 41   PageID 45

Dianne Coffey

CAUSE NO. _____  DC-15-14471

| | | |
|---|---|---|
| **FERGUSON, BRASWELL** | § | **IN THE DISTRICT COURT** |
| **& FRASER, P.C.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **Vs.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **TRAVELERS CASUALTY INSURANCE** | § | |
| **COMPANY OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | **____ JUDICIAL DISTRICT** |

## RETURN OF SERVICE WITH DECLARATION

On December 11, 2015 at 11:00 A.M., I received *Citation* to be served upon defendant Travelers Casualty Insurance Company of America in the above numbered and entitled cause. I executed said citation on **December 14, 2015** at 9:45 A.M. by delivering a copy of it with the date of delivery endorsed thereon, together with a copy of the Plaintiff's Original Petition attached thereto to Corporation Service Company the defendant's Registered Agent through its authorized representative Sue Vertrees at 211 East 7th St., Ste 620, Austin, Texas 78701-3218.

My name is Richard D. Jaco. My date of birth is November 18, 1953, and my address is 2800 E. Whitestone # 120/PMB 114, Cedar Park, Texas 78613. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Williamson County, Texas on the 15th day of December, 2015.

_____
Authorized Person, SCH7294
Exp 08/31/2016